# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 12-1024

STATE OF LOUISIANA

VERSUS

DEMARCUS W. LAW

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C 16173
HONORABLE ERIC R. HARRINGTON, DISTRICT JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of John D. Saunders, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Van H. Kyzar**
**District Attorney, Tenth Judicial District Court**
**P. O. Box 838**
**Natchitoches, LA 71458-0838**
**(318) 357-2214**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Edward K. Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **DeMarcus W. Law**

**DeMarcus W. Law**
**Louisiana State Penitentiary**
**Westyard Hickory 2**
**Angola, LA 70712**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **DeMarcus W. Law**

**GREMILLION, Judge.**

On March 9, 2010, the State charged Defendant, Demarcus W. Law, with second degree murder, a violation of La.R.S. 14:30.1, and attempted second degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30.1.

After pretrial hearings, jury selection began on January 17, 2012. The next day, the jury began hearing evidence; finally, on January 19, the jury found Defendant guilty as charged.

The trial court heard and denied Defendant's Motion for New Trial on April 18, 2012. On April 25, 2012, the court sentenced Defendant to life imprisonment without benefit of parole, probation, or suspension of sentence for second degree murder. For the attempted second degree murder conviction, the court sentenced him to a consecutive term of fifty years.

Defendant now appeals his convictions, assigning five errors. For the following reasons, Defendant's convictions are affirmed

## FACTS:

Dekaria Williams was sitting in the living room of his Natchitoches home. ShaMichael Berryman and Edward Paige were in the kitchen along with some quantity of cocaine.

Suddenly, Defendant burst into the house; Williams tried to grab him, but Defendant shot him in the arm.[1] Defendant then went into the kitchen and resumed shooting. Defendant's accomplice, Jody Hamilton, who was at the door, shot Williams multiple times.[2] As Williams was getting up from Hamilton's last shot,

---

[1] Any further reference to "the victim" will be a reference to Williams.
[2] Hamilton's appeal has already been addressed by this court. *State v. Hamilton*, 12-204 (La.App. 3 Cir. 11/7/12), 103 So.3d 705.

Defendant ran back into the room and shot him in the face. Williams survived his many wounds; Berryman died.

## ASSIGNMENT OF ERROR NUMBER FOUR

Defendant attacks the sufficiency of the evidence. A finding of insufficiency would require reversal of the conviction and obviate the need for discussion of the other four assignments of error. *See State v. Hearold*, 603 So.2d 731 (La.1992). Thus, we address it first.

Although Defendant frames his argument as relating to the denial of his motion for new trial below, during argument at the motion hearing he focused entirely on a different issue than the one he now raises. At the hearing, he argued that the evidence was insufficient only as to the murder of Berryman. The basis of his argument was that the evidence was circumstantial, since Williams heard shots but did not see the shooting in the kitchen. On appeal, he attacks both convictions, alleging that Williams was not credible due to inconsistencies between his trial testimony and his earlier statements to police.

Normally, an attack on sufficiency of evidence would be the subject of a motion for post-verdict judgment of acquittal, not a motion for new trial. However, as Defendant's brief uses the term "insufficient" and cites the seminal case in this area of law, *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979), we will proceed with a standard sufficiency analysis.

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, *rehearing denied*, 444 U.S. 890, 100 S.Ct.

2

195; *See also State v. Kennerson*, 96-1518, (La.App. 3 Cir. 5/7/97), 695 So.2d 1367.

The focus of Defendant's credibility attack is that the victim told his father that there were three or four attackers and he did not know who they were. During his testimony, the victim acknowledged that at one time he thought there may have been a third person involved in the offense, possibly a person named Paige, but he affirmed that he saw Defendant and Hamilton. He had known Defendant since the latter was a little boy, but they were not close. Regarding the victim's failure to identify the shooters to his father, the victim explained that he did not want his father to get involved, as he did not "want him [his father] to do nothing to get in no trouble."

Defendant argues "it is of great moment that Dekaria Williams was engaged in the commission of a felony at the time of the shootings."[3] Also, Defendant suggests that immediately after the incident, Williams displayed some degree of indifference in regard to Berryman. It is not clear that the second statement is a correct assessment. However, even if Defendant's factual premises are both correct, he does not explain how either would have affected the victim's credibility.

As noted in *Kennerson*, a jury's credibility assessments are not to be second-guessed. Defendant's arguments provide no basis for a reassessment of matters that were put to the jury at trial. This assignment lacks merit.

**ASSIGNMENT OF ERROR NUMBER ONE**

In this assignment of error, Defendant notes that the bench conferences were not recorded. Thus, he suggests the record is so incomplete that on appeal he

---

[3]Presumably, Defendant is referring to the presence of cocaine on the premises.

3

cannot effectively argue regarding jury composition. He notes that the original record did not include the jury strike sheets and the minutes do not specify whether the venire members excused were challenged for cause or peremptorily. Also, the minutes do not reveal which party challenged each venire member. However, the only venire member he mentions in this context is Delores Bivens, and both the minutes and the strike sheets show that she served as a juror.

Regarding unrecorded bench conferences, the supreme court has explained:

> This Court has never articulated a per se rule either requiring the recording of bench conferences or exempting them from the scope of La.C.Cr.P. art. 843, which requires in felony cases the recording not only of the evidentiary portions of trial but also of "the examination of prospective jurors . . . and objections, questions, statements, and arguments of counsel." *State v. Hoffman*, 98-3118, p. 50 (La.4/11/00), 768 So.2d 542, 586. The Court has instead conducted a case-specific inquiry to determine whether the failure to record the conferences results in actual prejudice to the defendant's appeal. As a general rule, the failure of the record to reflect the argument of counsel on objections, even when made in open court, does not affect a defendant's appeal because it does not hinder adequate review of the trial court's ruling. *State v. Johnson*, 438 So.2d 1091, 1104 (La.1983). Thus, the failure to record bench conferences will ordinarily not affect the direct review process when the record suggests that the unrecorded bench conferences had no discernible impact on the proceedings and did not result in any specific prejudice to the defendant. *See, e.g., Hoffman*, 98-3118 at 50-51, 768 So.2d at 587 (trial court cured any record problems "by summarizing substantive unrecorded conferences for the record"); *State v. Castleberry*, 98-1388, pp. 28-29 (La.4/13/99), 758 So.2d 749, 773 (three unrecorded bench conferences during direct examination of state witnesses had no discernible impact on the proceedings and the fourth concerned a mistrial motion by defense counsel, the basis of which was "easily ascertainable from the record" without regard to the unrecorded side-bar discussion); *State v. Deruise*, 98-0541, pp. 9-15 (La.4/3/01), 802 So.2d 1224, 1233-37 (failure to record bench conferences in which the prosecutor and defense counsel made their peremptory and cause challenges did not prejudice the appeal when the jury strike sheet was available for review and detailed the exercise of peremptory challenges by both sides and when the transcript of the voir dire revealed a substantial basis for denying a defense cause to the juror, even assuming that the challenge had been made but not preserved in the record; remaining unrecorded bench conferences involved evidentiary matters that were otherwise addressed in the

4

appeal, or involved matters of no discernible impact for which the defendant failed to demonstrate prejudice); *State v. Allen*, 95-1754, p. 11 (La.9/5/96), 682 So.2d 713, 722 (failure to record arguments at the bench concerning some of the defense peremptory challenges harmless when challenges for cause and arguments on the challenges were fully transcribed in the record and the minutes clearly reflected which jurors had been excused peremptorily and whether the state or defense had exercised the challenge).

On the other hand, in *State v. Landry*, 97-0499 (La.6/29/99), 751 So.2d 214, a combination of loud construction noise at the courthouse and audio recording problems on the part of the court reporter rendered the record grossly incomplete in several respects, including the failure to record peremptory strikes and challenges for cause made at the bench. *Landry*, 97-0499 at 1-2, 751 So.2d at 215. This Court reversed the defendant's capital conviction and sentence and remanded for a new trial because the deficiencies deprived the defendant of his constitutional right of appeal and judicial review. *Landry*, 97-0499 at 4, 751 So.2d at 216. *The Court thereby reaffirmed that "it is not the defendant's obligation to insure an adequate record .... it is the duty of the court .... to see that the court reporter makes a true, complete and accurate record of the trial."* *Landry*, 97-0499 at 3, 751 So.2d at 216 (citing *American Bar Association Standards Relating to the Function of the Trial Judge*, § 2.5 (1972)).

In the present case, the trial court and not defense counsel had the duty to insure that the bench conferences involving jury selection were properly recorded because La.C.Cr.P. art. 795(B)(2) *required* that counsel for the state and defense exercise their peremptory challenges in side bar conferences out of the hearing of jurors, and further required that the court refrain from attributing the strikes to either side on the record when excusing the jurors. Counsel therefore could reasonably assume that the court had taken adequate steps to preserve the record of the side-bar conferences for appeal just as counsel could reasonably assume that the evidentiary portions of trial were also adequately recorded and preserved for review. Counsel could also reasonably assume that the court had discharged its correlative duty of insuring that the minutes of the proceedings would conform to the requirements for the lodging of appeals in criminal cases in the courts of appeal and this Court, and thus include a list of challenges for cause and peremptory challenges in addition to a list of jurors selected to try the case. *See* La.S.Ct. Rule I, § 6(b); Rule 2-1.5(3) and (4), Uniform Rules Courts of Appeal.

*State v. Pinion*, 06-2346, pp. 7-10 (La. 10/26/07), 968 So.2d 131, 134-36

(emphasis added).

Defendant gives no indication that he attempted to obtain copies of the jury strike sheets himself. However, as a result of a motion for supplementation of the record filed by the State, this court obtained them on December 3, 2012, pursuant to an order. They show the cause-based strikes, but not which party made them. Nonetheless, those appear to be the successful cause-based challenges, and the sheets do show which party made each peremptory strike.[4] It stands to reason that such strikes were made in response to Defendant's unsuccessful challenges for cause. Combining the information in the strike sheets, the minutes, the voir dire examinations, and the short discussion of excused venire members that occurred at the venue hearing, Defendant could have constructed any viable arguments regarding various venire members.

Further, as the State points out, the record contains no objections by Defendant to any denials of challenges for cause. Louisiana Code of Criminal Procedure Article 800(A) states, "A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. The nature of the objection and grounds therefor shall be stated at the time of objection." Further, after denying Defendant's Motion for Change of Venue, the court asked Defendant's trial counsel whether there were "any other objections to the jury selection process." Counsel replied, "That's it, Your Honor." However, the *Pinion* court stated:

> Although the court of appeal faulted counsel for not making a general objection on the record to the composition of the jury, an objection that counsel had been forced to accept an obnoxious juror as the result of the trial court's erroneous ruling on one or more cause challenges has not been an aspect of the Court's jurisprudence for preserving error in the denial of cause challenges for over 50 years since *State v. Breedlove*, 199 La. 965, 7 So.2d 221 (1942) was

---

[4]The strike sheets show Defendant used all his peremptory challenges.

6

legislatively super[s]eded in the 1966 revisions to the Code of Criminal Procedure. *See State v. Robertson*, 92-2660 (La.1/14/94), 630 So.2d 1278, 1279-80. *In jury selection, counsel satisfies the requirements of Louisiana's contemporaneous objection rule by stating his grounds for a cause challenge and then by removing the juror with one of his remaining peremptory challenges when the court declines to excuse the juror for cause.* La.C.Cr.P. art. 841 ("It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take . . . and the grounds therefor.").

*Id.* at 136 (emphasis added).

Although *Pinion* did not discuss La.Code Crim.P. art 800, this passage negates the application of that article. We note that a recent majority opinion analyzing the conviction of Defendant's accomplice Hamilton was based on a *Pinion* issue. After discussing *Pinion* itself, our colleagues explained:

In *State v. Williams*, 06-1327 (La.App. 4 Cir. 1/23/08), 977 So.2d 160, *writ denied*, 08-413 (La.10/24/08), 992 So.2d 1033, the defendant argued that his right to full appellate review was impinged because the in-chambers portion of voir dire, where he raised challenges for cause, was not available. The fourth circuit noted that appellate counsel, who was not counsel at trial, raised no argument as to any specific juror who should not have been seated. *Id.*

The fourth circuit ruled as follows:

Here, unlike in *Pinion* but as in *Deruise*, the record contains detailed jury sheets that indicate the peremptory strikes for each party as well as those jurors who were excused for cause. In addition, as in *Deruise*, the transcript of voir dire includes the questioning of each prospective juror, from which it can be determined if there was a basis for any challenges for cause that the defense may have brought and may have been denied by the trial court, thereby causing the defense to exercise a peremptory challenge for a juror. A reading of the transcript of voir dire shows that there was no basis to excuse for cause any of the jurors who ultimately served on the jury or those whom the appellant had to excuse peremptorily. Thus, as in *Deruise*, the appellant cannot show prejudice from the loss of the in-chambers portions of the voir dire where the defense may have challenged any of these jurors for cause because there was no basis for granting a challenge for cause as to any of the jurors

7

who sat at trial or whom the defense peremptorily excused. Because the appellant cannot show prejudice from the lack of the transcript of these in-chambers conferences, he is not entitled to a new trial on this basis.

*Id.* at 176.

In *State v. Campbell*, 06-286 (La.5/21/08), 983 So.2d 810, *cert. denied*, 555 U.S. 1040, 129 S.Ct. 607, 172 L.Ed.2d 471 (2008), the defendant claimed that the transcript of numerous court appearances, hearings, and bench conferences were omitted from the appellate record. He also suggested that record omissions during voir dire rendered it difficult to establish the viability of cause challenges.

The supreme court addressed the issue stating:

In *Landry*, this Court reversed a conviction and death sentence because the appellate record was so deficient that the Court could not properly review the case for error. *Landry*, 1997-0499, pp. 1-4, 751 So.2d at 214-16. Even though this Court has found reversible error when material portions of the trial record were unavailable or incomplete, a "slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal" does not require reversal of a conviction. [*State v.*] *Draughn*, 2005-1825 p. 63 [(La.1/17/07)], 950 So.2d [583] at 625; *State v. Castleberry*, 1998-1388 p. 29 (La.4/13/99), 758 So.2d 749, 773, *cert. denied*, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999), quoting *State v. Allen*, 1995-1754 (La.9/5/96), 682 So.2d 713 (internal citation omitted). An incomplete record may be adequate for appellate review. *Castleberry*, 1998-1388 p. 29, 758 So.2d at 773; *State v. Hawkins*, 1996-0766 p. 8 (La.1/14/97), 688 So.2d 473, 480. A defendant will not be entitled to relief on the basis of an incomplete record absent a showing that he was prejudiced by the missing portions of the record. *Id.*

Defense counsel contends that the fact that the defendant represented himself at trial, coupled with the issues raised regarding the defendant's competency, necessitate a complete and accurate record since the defendant lacks the ability to provide important information to his appellate counsel. However, the defense offers no suggestion or argument that the defendant was prejudiced by the record omissions.

. . . .

8

With regard to the transcription of the voir dire proceedings, we found no difficulty in determining the appropriateness of the cause challenges, which were the issues raised by the defendant on appeal.

*Id*. at 872-74.

In *State v. Spears*, 08-831 (La.App. 3 Cir. 3/4/09), 8 So.3d 119, the defendant argued the record was so deficient in some areas that it deprived him of his right to appeal. Many portions of the voir dire transcript referred to individual venire members as "potential juror" rather than by name. *Id*. at 121. Additionally, a number of the comments and statements made throughout voir dire were listed as "inaudible." *Id.*

Jury strike sheets received by this court in *Spears* indicated the defendant used all of his peremptory strikes. The sheets listed which venire members were challenged for cause but did not show the party making the individual challenges and the reasons for any challenge. This court noted that the defendant did not raise any issue regarding the challenges made during voir dire. This court further stated:

The difficulty in this case, as in *Pinion*, is the fact that the discussions of the jury challenges do not appear in the record. We find the record does not contain enough information for Defendant to effectively challenge the denials of his challenges for cause. As a practical matter, a careful reading of the revised transcript of voir dire enables a reader to identify at least some of the unnamed prospective jurors. However, any attempt at argument or review would require identification of Defendant's unrecorded causal challenges, and reconstruction of both the reasons supporting them and the reasons for the trial court's denial of them. Any such attempt would venture into the realm of mere speculation. As the current record is insufficient for practical review of the denials of Defendant's challenges for cause, Defendant's conviction and sentence are vacated and the case remanded for new trial, pursuant to *Pinion*.

*Id*. at 122.

In *State v. L.W.*, 11-904 (La.App. 3 Cir. 6/6/12), ___ So.3d ___, the defendant alleged that the record was deficient because neither the transcript nor the minutes of voir dire contained either party's challenges for cause or peremptory challenges as to any of the prospective jurors. The record contained the entire colloquy between the trial court, the attorneys, and prospective jurors, and the identity of

the prospective jurors was readily apparent. Several bench conferences during voir dire, however, were not recorded. This court noted that the voir dire transcript indicated that forty-one prospective jurors were called, eight of which were excused by the trial court for cause with reasons stated. Nineteen of the prospective jurors were excused following bench conferences. Neither the transcript nor minutes of voir dire indicated which party made the challenges, the grounds for the challenges, or the trial court's reasons for its rulings. Additionally, the minutes did not detail any peremptory challenges, only that certain jurors were challenged for cause, excused for cause, or excused.

This court found:

> Unlike the facts before this court in *Spears*, 8 So.3d 119, the voir dire transcript contains detailed discussion of the voir dire examinations, including all of the questions posed by the trial court and parties and the responses of the each prospective juror. Additionally, the defendant does not identify a specific juror or jurors who should not have been seated based on the information available in the voir dire transcript. Accordingly, we find the defendant has not established he was prejudiced by the missing transcriptions of bench conferences during voir dire.

*Id.* at 14.

The case at bar is like *Pinion*, 968 So.2d 131, in that there is a transcript of voir dire, but that transcript does not include the in-chambers discussions regarding the exercise of cause and peremptory challenges, and the minute entries do not indicate which side excused the prospective jurors and why. Additionally, the record indicates that Defendant used all twelve of his peremptory challenges. Despite the fact that there was an objection to the denial of four challenges for cause asserted by Defendant, the record is uncertain as to exactly how many cause challenges Defendant made unsuccessfully. Based on *Pinion*, we find that the Defendant's convictions and sentences should be vacated and the matter remanded for further proceedings.

This case is distinguishable from *Campbell*, 983 So.2d 810, because Defendant in the case at bar has alleged that the record omissions would add additional support to the arguments raised in the assignment of error regarding the challenges for cause and show a possible pattern of disparate treatment. In contrast, the defendant in *Campbell* offered no suggestion or argument that he was prejudiced by the record omissions.

The case at bar is also distinguishable from *Williams*, 977 So.2d 160, as the record at issue does not indicate which jurors were challenged for cause, other than the four jurors defense counsel addressed at the completion of jury selection, or peremptorily struck. Further, a reading of the transcript of voir dire cannot show there was no basis to excuse for cause any of the jurors who ultimately served on the jury or those whom Defendant had to excuse peremptorily, as one cannot ascertain who was peremptory excluded. Such a determination would call for speculation, which this court disapproved of in *Spears*, 8 So.3d 119.

This case is also similar to *L.W.*, __ So.3d __, in that the instant record contains a complete transcript of voir dire, and Defendant fails to identify a specific juror or jurors who should not have been seated based on the information available in the transcript of voir dire. However, this case is distinguishable from *L.W.* in that Defendant in the case at bar makes some argument regarding the unrecorded bench conferences and the defendant in *L.W.* merely claimed his right to appeal based on a complete record of all evidence upon which the judgment was based was violated.

Based on the supreme court's decision in *Pinion*, 968 So.2d 131, Defendant's claim has merit; thus, his convictions and sentences will be vacated and the matter remanded to the trial court for further proceedings. In light of the foregoing ruling, this court need not address any of Defendant's other assignments of error.

*State v. Hamilton*, 103 So.3d at 710-713 (footnotes omitted).[5]

In the present case, the record contains detailed voir dire examinations; unlike *Hamilton*, the jury strike sheets were also available. Further, Defendant does not make any specific argument regarding challenges to any particular venire members. The present case is more akin to *Williams*, 977 So.2d 160, and *Deruise* 802 So.2d 1224.

Defendant suggests that his argument regarding change of venue and racial composition may have been strengthened if the record contained the unrecorded bench conferences. However, he does not explain how information from the bench

---

[5] In a single-paragraph argument in his Supplemental Reply Brief, Defendant argues that the present case should be remanded "for the reasons stated in *Hamilton*."

11

conference would have enhanced that argument. Further, as will be seen in the analysis of the next assignment, *Pinion* does not apply to the deficiencies that may have occurred in relation to the Motion for Change of Venue. Thus, Defendant has failed to demonstrate that his case was prejudiced by the failure to record bench conferences.

This assignment lacks merit.

### ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, Defendant argues that the trial court erred in failing to grant his Motion for Change of Venue. The basis of the motion was an alleged racial imbalance in the composition of the jury. Defendant alleges, as he did in the trial court, that most of the African-American venire members examined knew parties to the case or had previously heard about the shooting. Further, he alleges, "most or all of the Caucasian jury candidates were unaware of the facts of the case. As a result it was impossible to get a jury consisting of a cross[-]section of the community in this case."

Defendant cites no cases on point with his current argument, and our own research has found none. This particular argument appears to be *res nova* in the context of a motion for change of venue; normally, a defendant's allegations of improper racial composition of a jury are raised via *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986). *Batson* prohibits using race a basis to exclude individual jurors. There is no indication that any *Batson* challenges were raised in the present case.

Nevertheless, our supreme court and this court have heard cases in which the racial-composition issue has been raised in the context of motions to quash. For

12

example, the supreme court has reviewed the jurisprudence of a claim of under-representation of a minority in the venire:

> A general jury venire "shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race." La.C.Cr.P. art. 419(A). The defendant bears the burden of proving the grounds for setting aside the venire. *State v. Liner*, 397 So.2d 506 (La.1981); *State v. Manning*, 380 So.2d 54 (La.1980). That burden of proof requires that the defendant show more than the underrepresentation of blacks on the petit jury venire in order to prove a systematic exclusion of blacks. *Manning, supra*; *State v. Anderson*, 315 So.2d 266 (La.1975). The law requires that there must not be a systematic exclusion of blacks in the source or sources from which jury venires are chosen. However, that does not mean that a defendant is entitled to a petit jury which reflects the population of the community in every respect. "Defendants are not entitled to a jury of any particular composition." *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *State v. George*, 371 So.2d 762 (La.1979). In fact, a jury comprising a complete representation of the various groups within the community would be virtually impossible to seat. *State v. Cage*, 337 So.2d 1123 (La.1976).

*State v. Lee*, 559 So.2d 1310, 1313-14 (La.1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1431 (1991).

This court addressed a claim similar to that asserted here as follows:

> In the case *sub judice*, it is undisputed that the 200 persons in the petit jury venire were selected at random by a computer. After several persons were excused from jury service, the clerk pulled twelve names at random from the jury box, and continued accordingly until a twelve-person jury was selected. During voir dire, the State successfully challenged two jurors for cause but did not peremptorily challenge any jurors. The defendant successfully challenged two jurors for cause and peremptorily challenged five jurors. Although the petit jury venire was approximately 5% to 10% black, no blacks were selected for voir dire. After an all[-]white jury was selected, accepted and sworn in, the defendant filed a motion to quash the petit jury venire on the basis that it did not contain a representative cross-section of the community. According to the defendant, this forced him "to go to trial with an all[-]white jury."

> In *State v. Kirts*, 447 So.2d 1 (La.App. 3rd Cir.1983), *writ not considered*, 464 So.2d 306 (La.1985), this court addressed and rejected the same argument defendant asserts in the case sub judice.

13

In *Kirts,* defense counsel filed a motion to quash the petit jury venire on the morning of trial, contending that the petit jury venire was racially imbalanced. Although no allegation of discrimination was offered for the racial imbalance, counsel for defendant asserted that a newly drawn venire, representative of a cross[-]section of the community, was necessary to assure that defendant would be judged by a fair and impartial jury. On appeal from the trial court's refusal to grant the motion to quash, we rejected *Kirts'* argument. We held that the defendant failed to make a prima facie showing of discrimination where there are no allegations of fraud, and the record is devoid of any indications of such, or that some great wrong was committed that would work irreparable injury to him. *Id.,* 447 So.2d at 3.

In the case *sub judice,* defendant asserts that he was prejudiced by the petit jury venire. We disagree. At the argument of the motion to quash, defense counsel stated that he was not alleging fraud, and offered no evidence of discrimination or irreparable injury attributable to the petit jury venire. Therefore, based on a careful examination of the record, we find that the trial court properly denied defendant's motion to quash the petit jury venire, finding that defendant failed to make a prima facie showing of discrimination. *State v. Kirts, supra.* Defendant's assignment of error is without merit.

*State v. Melancon,* 563 So.2d 913, 914 (La.App. 3 Cir. 1990), *writ denied,* 586 So.2d 527 (La.1991). Thus, jurisprudence establishes that Defendant is not entitled to the relief he seeks. He does not allege fraud or systematic racial discrimination. Further, the cases cited show that even if racial imbalance occurred that, without more, would not entitle him to relief.

For the reasons discussed, this assignment lacks merit.

### ASSIGNMENT OF ERROR NUMBER THREE

In his third assignment of error, Defendant argues the "jury instructions incorrectly included the phrase 'or to inflict great bodily harm' within the attempted second degree murder charge."

Defendant observes that when the trial court advised the jury regarding the elements of attempted second degree murder, it did not include the fact that

14

specific intent to kill is required to support a conviction for attempted second degree murder. He cites jurisprudence:

> To sustain a conviction for attempted second degree murder, the state must prove that the defendant: (1) intended to kill the victim; and (2) committed an overt act tending toward the accomplishment of the victim's death. La. R.S. 14:27; 14:30.1. Although the statute for the completed crime of second degree murder allows for a conviction based on "specific intent to kill or to inflict great bodily harm," La. R.S. 14:30.1, attempted second degree murder requires specific intent to kill. *State v. Huizar*, 414 So.2d 741 (La.1982).

*State v. Bishop*, 01-2548, p. 4 (La. 1/14/03), 835 So.2d 434, 437.

The State argues that this court should not review the assignment because Defendant failed to object to the instruction. As La.Code Crim.P. art. 801(C) explains, in pertinent part,

> A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection.

As the State observes, this court has stated:

> In his first assignment of error, Defendant argues the trial court erroneously charged the jury in its initial charge of law when it included the element of specific intent to kill or inflict great bodily harm. Defendant concedes that an objection to the jury charge was not made. As such, pursuant to La.Code Crim.P. art. 801, the issue was not preserved for review on appeal. *State v. Campbell*, 06-286 (La.5/21/08), 983 So.2d 810, *cert. denied*, ___U.S.___, 129 S.Ct. 607, 172 L.Ed.2d 471 (2008). Accordingly, this assignment of error cannot be considered.

*State v. Jones*, 09-1453, p. 7 (La.App. 3 Cir. 8/11/10), 45 So.3d 1136, 1141, *writ denied*, 10-504 (La. 2/18/11), 57 So.3d 328, *writ denied*, 10-2132 (La. 2/18/11), 57 So.3d 330.

In another case, a defendant argued that the trial court had "misstated an element of the crime." *State v. Brown*, 07-388, p. 15 (La.App. 3 Cir. 10/3/07), 966

15

So.2d 1138, 1148, *writs denied*, 07-2159, 08-326 (La. 3/28/08), 978 So.2d 304, 312. This court stated, "Due to the lack of contemporaneous objection, we are required to find that the assignment lacks merit. *See State v. Howard*, 98-64 (La. 4/23/99), 751 So.2d 783, *cert. denied*, 528 U.S. 974, 120 S.Ct. 420 (1999). *See also State v. Belgard*, 410 So.2d 720 (La.1982)." *Brown*, 966 So.2d 1138 at 1149.

In his reply brief, Defendant argues for an exception to the contemporaneous objection rule. He relies mainly upon a single supreme court case:

> The state points out that defendant did not object to the erroneous jury instruction concerning definitions of the crimes of first degree and second degree murder. And they call our attention to a long line of cases to the effect that erroneous jury instructions are not errors patent on the face of the record. Absent objections and because the trial court is denied an opportunity to correct them, such errors are generally not reviewable. *State v. Progue*, 350 So.2d 1181 (La.1977); *State v. Roche*, 341 So.2d 348 (La.1976); *State v. Smith*, 339 So.2d 829 (La.1976).
>
> The state's argument is of course correct, so far as it goes. Nonetheless it is within the province of this reviewing court to entertain complaint of Constitutional violations on appellate review notwithstanding that consideration of such complaint more often than not is deferred until filing of a writ of habeas corpus. This Court's usual pretermission of such issues stems from the need of an evidentiary hearing which can only be had incident to the writ of habeas corpus. The record before us, however, bears full and sufficient proof of the error which no posterior hearing could augment.

*State v. Williamson*, 389 So.2d 1328, 1331 (La.1980) (footnote omitted).

In *Brown*, this court discussed *Williamson*:

> In *Howard*, the supreme court explained:
>
>> As an initial matter, defendant's trial counsel did not object to the instruction at trial, and thereby waived any claim based on it. La.C.Cr.P. art. 841; [*State v.*] *Taylor*, [93-2201 (La.2/28/96) ], 669 So.2d [364] at 367-69; [*State v.*] *Harris*, 383 So.2d [1 (La.1980)] at 10-11. Although Louisiana courts have sometimes waived the contemporaneous objection rule, *see State v. Williamson*, 389 So.2d 1328, 1331 (La.1980) (an error involving "the

16

very definition of the crime of which defendant was in fact convicted . . . is of such importance and significance as to violate fundamental requirements of due process"), this Court has also on two occasions explicitly cautioned that *Williamson* did not establish jurisprudentially the equivalent of a "plain error" rule created by F.R.Crim.P. 52(b). *State v. Arvie*, 505 So.2d 44, 48 (La.1987); *State v. Thomas*, 427 So.2d 428, 435 (La.1982) (on rehearing) (*Williamson* "should not be construed as authorizing appellate review of every alleged constitutional violation and erroneous jury instruction urged on appeal without timely objection at occurrence."); *see also Belgard*, 410 So.2d 720, 727 (La.1982) (to preserve issue of erroneous instruction on elements of attempted second degree murder, defendant must have objected to the charge at trial). At any rate, defendant's claim fails on the merits.

*Id.* at 804.

We note that the First Circuit Court of Appeal has also discussed the viability of *Williamson* in detail. The first circuit observed:

[T]he defendant's trial counsel did not object to the erroneous instructions given by the trial court. Thus, the defendant ordinarily is precluded from raising such an alleged error for appellate review. LSA-C.Cr.P. arts. 801 and 841. Nevertheless, exceptions to this rule have been made in individual cases where there have been fundamentally erroneous misstatements of the essential elements of the charged offense. In such cases, the Louisiana Supreme Court has adopted the view that such fundamentally incorrect jury instructions so affect the fairness of the proceedings and the accuracy of the fact-finding process that due process of law requires reversal, even in the absence of compliance with legislative procedural mandates. *See State v. Williamson*, 389 So.2d 1328, 1331 (La.1980); *State v. Johnson*, 98-1407, p. 10 (La.App. 1st Cir.4/1/99), 734 So.2d 800, 807, *writ denied*, 99-1386 (La.10/1/99), 748 So.2d 439.

Whether an appellate court can continue to make a *State v. Williamson* analysis and review such a matter on direct appeal is now in doubt, in light of the supreme court's statement in *State v. Hongo*:

[T]he instant error is not structural, it necessarily is not of such significance as to violate fundamental requirements of due

17

> process, *See State v. Williamson*, 389 So.2d
> 1328 (La.1980), and thus a defendant must
> make a contemporaneous objection in order
> to preserve the error for direct review. *State
> v. Thomas*, 427 So.2d 428, 435 (La.1982)
> (on rehearing) (limiting *Williamson* as it
> "should not be construed as authorizing
> appellate review of every alleged
> constitutional violation and erroneous jury
> instruction urged first on appeal without
> timely objection.")

> *State v. Hongo*, 706 So.2d at 422, n. 3. Nevertheless, we
> find it unnecessary to resolve the issue in the case now
> before the court, having found reversible error on another
> basis. Consequently, we pretermit this assignment of
> error.

*State v. Woods*, 00-2147, pp. 18-19 (La.App. 1 Cir. 5/11/01), 787 So.2d 1083, 1096-97, *writ denied*, 01-2389 (La.6/14/02), 817 So.2d 1153.

> In *State v. Falcon*, 06-798 (La.App. 5 Cir. 3/13/07), 956 So.2d
> 650, the fifth circuit cited both *Hongo* and *Williamson*, and then
> addressed a faulty jury instruction despite the absence of a
> contemporaneous objection. However, the instruction in *Falcon* was
> easily disposed of as harmless error. While the possible error here is
> potentially more complex, we find that the failure to timely object did
> not allow the trial court to correct the obvious error and that this
> assignment of error lacks merit.

*Brown*, 966 So.2d at 1149-50. Also, we note that neither *Jones* nor *Campbell*, a supreme court case cited in *Jones*, discussed *Williamson*. Both elected to enforce La.Code Crim.P. art. 801(C).

Likewise, we elect to enforce La.Code Crim.P. art. 801(C). We find that the very reason for the mandate of a contemporaneous objection is to allow the trial court to correct what the *Falcon* court properly labeled an "obvious error". The lack of such an objection in this record renders this assignment meritless.

18

## ASSIGNMENT OF ERROR NUMBER FIVE

In his fifth and final assignment of error, Defendant argues that the trial court erred by allowing two pistols to be introduced into evidence. He contends that the State failed to show that there was any connection between him and the pistols.

We agree with the State's position that Defendant failed to object to the introduction of these firearms at trial. Thus, he has failed to preserve the issue for appellate review pursuant to the "contemporaneous objection rule" codified by La.Code Crim.P. art. 841. *See State v. Knight*, 09-359, p. 26 (La.App. 5 Cir. 2/9/10), 34 So.3d 307, *writ denied*, 10-2444 (La. 10/21/11), 73 So.3d 376. Thus, the assignment was not preserved for review.

## DECREE

Defendant's convictions and sentences are affirmed.

**AFFIRMED**.